FILED

2008 Sep-29  PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TRACY THRASHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:06-cv-01289-JEO** |
| | ) | |
| **AMERICAN INTERNATIONAL** | ) | |
| **GROUP, INC.; NATIONAL UNION** | ) | |
| **FIRE INSURANCE COMPANY OF** | ) | |
| **PITTSBURGH, PA; AMERICAN** | ) | |
| **INTERNATIONAL SPECIALTY LINES** | ) | |
| **INSURANCE COMPANY; and ILLINOIS** | ) | |
| **NATIONAL INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the court in the above-styled action are the following three motions: the

defendants' Rule 12(c), FED. R. CIV. P., motion for judgment on the pleadings (doc. 8)[1], the

plaintiff's motion to strike exhibit 8 to the defendants' joint answer and any references thereto in

the answer and in the defendants' memorandum in support of their motion for judgment on the

pleadings (doc. 15), and the plaintiff's motion for leave to file a supplemental memorandum

regarding issues raised at oral argument (doc. 26).  The pertinent issues have been fully briefed,

and the court has held a hearing at which the parties presented oral argument.  Upon

consideration, the court finds: (1) that the plaintiff's motion for leave to file a supplemental

memorandum is due to be granted; (2) that the plaintiff's motion to strike is due to be granted in

part, insofar as it requests the court to exclude exhibit 8 to the answer in resolving the motion for

judgment on the pleadings, and is otherwise due to be denied; and (3) that the defendants' motion

---

[1] References herein to "Doc.___" are to the document number assigned by the Clerk of the Court.

for judgment on the pleadings is due to be granted and that the action be dismissed with prejudice.

## I.  BACKGROUND

### A.    Overview of the Claims and the Parties

In this diversity action, plaintiff Tracy Thrasher, a former executive officer for MedPartners, Inc. ("MedPartners" or the "company"), brings claims under Alabama law alleging breach of an insurance contract, the tort of bad faith, "negligent or intentional failure to settle," and breach of fiduciary duty.  The defendants are four insurance companies: American International Group, Inc. (hereinafter "AIG"); National Union Fire Insurance Company of Pittsburgh, PA ("National Union"); American International Specialty Lines Insurance Company ("AISLIC"); and Illinois National Insurance Company ("Illinois National") (collectively "defendants") (*Id.*)  The latter three companies are wholly owned or majority owned subsidiaries of AIG.  (*Id.* ¶ 10).  Each of Thrasher's claims arise out of allegations that, in 1999, the defendants negotiated a settlement of derivative and securities fraud actions brought against MedPartners and certain officers and directors that did not include a "full" or "complete" release for her.  More specifically, Thrasher complains that, although she was not a defendant in those actions, the settlement in question, reached after her employment had been terminated, expressly carved out and preserved the right of MedPartners itself to bring direct claims against her.  This, Thrasher says, caused her to suffer damage in that it did enabled the company in July 2004 to assert direct counterclaims against her, forcing her to more sharply compromise her own pending legal claims against the company and to pay attorney fees.  The defendants now contend that they are entitled to judgment on the pleadings on all claims.

**B.      Thrasher's Employment with MedPartners and the 1998 Securities
          Litigation**

Thrasher began working for MedPartners in 1993. (Complaint, Doc. 1, ¶ 15)  By the end

of 1997, she was the corporate secretary and vice president in charge of human resources and

thus one of MedPartners' executive officers.  (*Id.*)  Beginning in early 1998, MedPartners and

certain of its officers and directors were faced with a host of securities and derivative liability

actions (hereinafter the "1998 Securities Litigation").   (*See id.* ¶¶ 16-21).  These actions included

claims charging that MedPartners was liable for allegedly having made false and misleading

public statements regarding the company's financial condition and prospects, in violation of

federal and state securities laws, and that the company was further liable under various common-

law theories, including fraud, breach of contract, and breach of fiduciary duty.  (Complaint, ¶¶

17-18).  These actions further included shareholder derivative lawsuits filed on behalf of

MedPartners against individual officers, directors, and employees, contending that such

personnel had engaged in wrongdoing, including fraud, breach of contract, negligence, and

breach of fiduciary duty, to the detriment of the company.  (*Id.* ¶¶ 19-21).  Thrasher, however,

was not a defendant in any case that comprised the 1998 Securities Litigation.  (*Id.* ¶ 22).  While

that litigation was pending, a new management group at MedPartners terminated Thrasher's

employment in September 1998.  (*Id.* ¶ 23).

**C.      Defendants' Issuance of Insurance Policies Related to the 1998 Securities
          Litigation**

Thrasher alleges that at all relevant times, she, as a current or former executive officer of

MedPartners, was an insured under the primary MedPartners officers and directors liability

insurance policies that were issued by one or more of the defendants.[2]  (Complaint ¶ 20).  It is

undisputed that defendant National Union issued two insurance policies to MedPartners that

included coverage for corporate liability, as well as for liability of officers and directors sustained

as a result of securities and derivative lawsuits.  (Answer, Doc. 11, ¶ 20).  Those policies are

attached to the answer as exhibits 2 and 3, respectively, and Thrasher has acknowledged that they

are the agreements that give rise to the defendants' insurance relationship with her and form the

basis of her claims for breach of contract.  (*See* Doc. 16 at 47).  Each of those policies lists only

National Union as the obligated "Insurer."  (Answer, Exhibit 2 & 3, "Item 8").  One has a policy

period from September 6, 1997 to September 6, 1998 and has a limit of liability of $25 million.

(*See* Answer, Exhibit 2, "Item 3"& "Item 4").  The other has a policy period from September 6,

1998 to September 6, 1999 and has a limit of liability of $10 million (Answer, Exhibit 3, "Item

3"& "Item 4").  These two policies (hereinafter collectively the "D&O Policies") each also

contain an "insured-versus-insured" exclusion, providing that the "Insurer shall not be liable to

make any payment for Loss in connection with a Claim made against an Insured ... "

> which is brought by any Insured or by [MedPartners]; or which is brought any
> security holder of [MedPartners], whether directly or derivatively, unless such
> security holder's Claim is instigated and continued totally independent of, and
> totally without the solicitation of, or assistance of, or active participation of, or
> intervention of, any Insured or [MedPartners] ....

Answer, Exhibit 2, ¶ 4(i); Exhibit 3, ¶ 4(i).

   Thrasher alleges that in October 1998, one or more of the defendants entered into an

agreement with MedPartners to provide supplemental insurance coverage, in an unlimited

---

[2]In her complaint, Thrasher does not make any material distinction between the acts or identities of the four defendants,
save for requisite averments regarding their respective citizenship.  While acknowledging that "each defendant may technically
be a separate corporate entity," she alleges that "corporate distinctions have been blurred and should be disregarded," which she
does, referring to the four defendants throughout the complaint collectively as "AIG."  (Complaint ¶ 10).

amount, for losses relating to the wrongdoing alleged in the 1998 Securities Litigation.  (*See* Complaint ¶¶ 24-26).  Thrasher contends that the defendants did so in exchange for a cash payment premium of $22.5 million, plus a right of first refusal in over $20 million more in insurance from MedPartners.  (*Id.* ¶ 25).  Thrasher has attached a copy of this supplemental insurance agreement to the answer as exhibit B.  The agreement is formally entitled, "Catastrophe Equity Protection Agreement," and it lists only defendant AISLIC as the "Insurer" (hereinafter the "AISLIC Policy").  (*See* Complaint, Exhibit B; *see also* Answer, Exhibit 1).  The AISLIC Policy provides that the insurer on the policy would be required to pay losses stemming from certain enumerated "Actions," which were defined to include specified, then-"Pending Actions" in the 1998 Securities Litigation, as well as "any other actions, suits or proceedings ... alleging, arising out of, based upon or attributable to the facts alleged in the Pending Actions or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Pending Actions."  (*Id.* at 1-2, ¶ 1).  However, the AISLIC Policy expressly excludes from the definition of covered "Actions" the bringing of

> any Claim brought, made alleged or asserted by any person or entity in response to, as a result of or following in time any Claim brought, made, alleged or asserted against such person or entity by [MedPartners] or any Affiliate of [MedPartners] alleging, arising out of, based upon or attributable to the facts alleged in the Pending Actions or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Pending Actions.

(*Id.*).  The AISLIC Policy similarly incorporated the insured-versus-insured exclusion of section 4(i) of the D&O Policies.  (*See id.* ¶ 4).

Thrasher contends that, although she was an insured under the existing D&O Policies, the defendants, recognizing the additional multi-million dollar premiums to be earned on the AISLIC

Policy, "agreed to leave Thrasher without coverage under the [AISLIC Policy] and without coverage under existing or ongoing Directors and Officers liability policies," *i.e.*, the D&O Policies. (Complaint ¶ 26). In more concrete terms, Thrasher had an employment agreement with MedPartners that she claims provided significant severance benefits and stock options. (*Id.*). She alleges that the new management at MedPartners wanted to leave her exposed to liability in the wake of the 1998 Securities Litigation so that the company would still be able to file direct claims against her, which the company could use as "leverage against her to avoid paying the severance benefits and stock options it owed Thrasher ...." (*Id.*).

### D.    Settlement of the 1998 Securities Litigation

Thrasher alleges that, in January 1999, one or more of the defendants, on behalf of MedPartners, entered into a Memorandum of Understanding (hereinafter "MOU") with the 1998 Securities Litigation plaintiffs for the purpose of settlement negotiations. (Complaint at ¶ 27; *id.*, Exhibit C). One of the terms of the MOU provided that the final settlement would "include a release of all claims (including all claims that were brought or could have been brought in the [1998 Securities] Litigation) in a form acceptable to all parties and a release of all counsel in the litigation." (Complaint, Exhibit C, ¶ 3). Ultimately, the parties to 1998 Securities Litigation entered into a settlement agreement that would, for consideration in the amount of $56 million, secure the release of all derivative claims that were or could have been brought by MedPartners or its shareholders against MedPartners' officers and directors in the derivative portion of the 1998 Securities Litigation. (*See* Complaint ¶ 27; Complaint, Exhibit D, ¶¶ 1.19, 1.20; Answer, Exhibit 5, ¶¶ 1.19, 1.20). However, the settlement agreement simultaneously sought to carve out and preserve all rights that MedPartners itself might have to bring claims or counterclaims

directly, with the consent or at the direction of its management or board of directors, against a number of individuals with whom MedPartners was either involved in litigation at the time or with whom it was thought it might be involved in litigation in the future -- including Thrasher specifically.  (*Id.*; *see also* Doc. 12 at 5).  On July 10, 1999, an Alabama state court entered an order and final judgment approving the terms of the settlement agreement, concluding the 1998 Securities Litigation.  (*See* Answer, Exhibit 9).  According to Thrasher, the defendants thus exhausted the policy limits of the insurance policies that covered the 1998 Securities Litigation to satisfy the settlement agreement without securing a release for Thrasher or providing notice to her that a release was not secured for her.  (Complaint at ¶ 30).

### E.    Thrasher's Action Against MedPartners

On August 12,  2003, Thrasher filed suit in Alabama state court against MedPartners, which was by that time known as Caremark, RX, Inc. ("Caremark").  In that action, she alleged breach of contract, conversion, and misrepresentation, in an attempt to collect severance pay and to exercise stock options to which she was purportedly entitled under the terms of her employment agreement with MedPartners.  (Answer, Ex. 7).  Thrasher subsequently submitted these claims to arbitration.  In connection with those proceedings, Caremark filed an answer on July 1, 2004, that included counterclaims against Thrasher based on the same types of alleged wrongdoing that formed the basis of the derivative claims in the 1998 Securities Litigation. (Complaint ¶ 41; Answer, Exhibit 6 at 5).  Specifically, Caremark asserted that Thrasher, while a corporate officer of MedPartners, breached her employment agreement and fiduciary duties by failing to prevent or expose fraudulent conduct of which she was aware and by engaging in wrongful acts and omissions relating to, among other issues, corporate disclosures and record

keeping, due diligence, and executive compensation.  (Complaint ¶ 41; Answer, Exhibit 6, at 5).

Caremark alleged that such malfeasance had caused Caremark to suffer "substantial damages in

excess of $5 million."  (Answer, Exhibit 6, at 5).  Thrasher contends that, because of the

potential liability she faced on the counterclaims, she was forced to compromise at a reduced

value the claims she was asserting for severance benefits and stock options and was further

forced to pay substantial attorneys' fees and costs.  (Complaint ¶ 46).

## II.   THE INSTANT ACTION

### A.   The Pleadings

Thrasher filed this action on June 30, 2006.  Thrasher brings all of her claims under

Alabama law against all four defendants.  In count one, she claims that the defendants breached

insurance contracts with her.   This claim is based on the defendants having allegedly agreed, as

part of the negotiations to supply supplemental, unlimited coverage under the AISLIC Policy, to

leave Thrasher without insurance under the existing D&O Policies and on an ongoing basis.

(Complaint ¶¶ 47-51).  Thrasher further alleges that defendants breached their insurance

contract(s) with her by failing or refusing to obtain a full release for her of all claims that were

asserted or could have been asserted in the 1998 Securities Litigation and instead preserving

MedPartners' right to itself to bring claims against her  (*Id.*)

In count two, Thrasher alleges that the defendants committed the tort of bad faith by:

(1) wrongfully excluding the plaintiff from the full release in the Stipulation of Settlement

knowing that she would be sued by MedPartners; (2) wrongfully exhausting policy limits to

satisfy the Stipulation of Settlement knowing that the plaintiff was not fully released and that she

would be sued by MedPartners; (3) negotiating a release for itself at the expense and to the

detriment of the plaintiff, while refusing to negotiate a full release for the plaintiff; and (4) intentionally agreeing to leave the plaintiff without any coverage under existing policies and on an ongoing basis in connection with claims that mirrored those asserted in the 1998 MedPartners Securities Litigation. (Complaint at ¶¶ 52-56).

In count three, the plaintiff alleges that the defendants committed negligent/intentional failure to settle when they negligently, recklessly, deliberately, intentionally and/or wrongfully excluded the plaintiff, their insured, from the group of individuals released from liability under the terms of the Stipulation of Settlement which settled the 1998 MedPartners Securities Litigation. (Complaint at ¶¶ 57-60).

Finally, count four alleges that the defendants committed a breach of fiduciary duty that arose from their contractual duties, superior knowledge, and/or assumption of duties when they committed the aforementioned actions. (Complaint at ¶¶ 61-64).[3]

In support of her claims, Thrasher attached to the complaint the following documents as exhibits: a transcript of a preliminary injunction hearing held December 2, 1999 before Edwin L. Nelson, United States District Judge, Northern District of Alabama (Exhibit A); the AISLIC Policy along with an associated "Term Sheet" and cover letter (Exhibit B); the MOU (Exhibit C); an excerpt from the 1999 Stipulation of Settlement submitted to the state court to conclude the 1998 Securities Litigation (Exhibit D); and handwritten notes regarding negotiations between

---

[3]Thrasher's claims in this action are substantially similar to those brought by another former MedPartners officer or director against National Union and AIG in an Alabama state court. *See Ex parte Johnson*, 837 So. 2d 826 (Ala. 2002) (Lyons, J., concurring specially). That case reached the Alabama Supreme Court on the issue of whether the plaintiff was entitled to a continuance of a summary judgment hearing under Rule 56(f), ALA. R. CIV. P. In that posture, two justices wrote specially concurring opinions to address why they agreed with the majority's decision to deny the plaintiff's petition for a writ of mandamus to compel a continuance. *Ex parte Johnson*, 837 So. 2d at 826-29 (Lyons, J., concurring specially; *id.* at 829 (Johnstone, J., concurring specially). However, neither of the special writings sought to address the merits of any claims in the action.

defendants and general counsel for MedPartners (Exhibit E).

On September 21, 2006, the defendants filed a joint answer that admitted some allegations in the complaint, denied others, and denied any and all liability.  (*See* Answer, Doc. 11).  That answer also attached nine separate documentary exhibits, as follows: the AISLIC Policy (Exhibit 1), the 1997 D&O Policy (Exhibit 2), the 1998 D&O Policy (Exhibit 3), the MOU (Exhibit 4), the Stipulation of Settlement submitted to conclude the 1998 Securities Litigation (Exhibit 5), the Answering Statement and Counterclaims of Caremark in Thrasher's arbitration case (Exhibit 6), Thrasher's judicial complaint against Caremark (Exhibit 7), a letter dated April 6, 1999 pertaining to the terms of the Stipulation of Settlement agreement (Exhibit 8), and the July 10, 1999 order of the court approving the settlement in the 1998 Securities Litigation (Exhibit 9).

**B.      The Pending Motions**

On the same day that the defendants filed their joint answer, they filed their now-pending motion for judgment on the pleadings, pursuant to Rule 12(c), FED. R. CIV. P.  (Doc. 8).  The parties have filed a multitude of briefs on this motion (*see* docs. 9, 16, 21, 23, 25, 26 and 27), and the court has heard oral argument.  In connection with that briefing, Thrasher has filed a pending motion seeking leave to file a supplemental memorandum relating to issues raised at oral argument.  (Doc. 26).  Also pending before the court is Thrasher's motion to strike the April 6, 1999 letter attached as Exhibit 8 to the defendants' answer, as well as all references to such letter appearing in (a) the answer, (b) the motion for judgment on the pleadings, and (c) in the memo in support of such motion for judgment on the pleadings.  (Doc. 15).

## III.   ANALYSIS

**A.   Plaintiff's Motion for Leave to File a Supplemental Brief.**

The court concludes that it is appropriate to consider all of the parties' respective briefs in support and in opposition to the defendants' motion for judgment on the pleadings.  Accordingly, Thrasher's motion seeking leave to file a supplemental memorandum regarding issues raised at oral argument (doc. 26) is due to be granted.

**B.   Plaintiff's Motion to Strike Exhibit 8 to the Answer**

Exhibit 8 to the defendants' joint answer is a copy of a letter dated April 6, 1999 from Edward D. Buckley, III, of the Atlanta, Georgia, law firm of Greene, Buckley, Jones & McQueen, to John M. Newman, Jr., of the Cleveland, Ohio, law firm of Jones, Day, Reavis & Pogue (hereinafter "exhibit 8" or the "Buckley letter").  The body of the Buckley letter states in its entirety as follows:

> I have reviewed the Settlement Agreement you sent to me including the fax with the change of language in paragraph 1.19. In its current form, I am not authorized to agree to its terms on behalf of Larry R. House, Harold O. Knight Jr. and Tracy Thrasher.  I will be in court tomorrow morning but will be happy to discuss this with you later tomorrow afternoon.

(Answer, Exhibit 8).  The defendants have suggested that, in writing this letter, Buckley was acting as legal counsel for Thrasher and was advising Newman as counsel for MedPartners that he, Buckley, was intending to oppose on Thrasher's behalf the release language in the Stipulation of Settlement regarding the 1998 Securities Litigation.  (*See* Answer at 10, "First Defense," ¶¶ 2(a)-(c)); Defendants' Memo in Support of Motion for Judgment on the Pleadings, Doc. 9, at 5-6, 9).

On January 7, 2007, Thrasher filed a motion to (1) strike the Buckley letter from the

11

defendants' answer; (2) strike all references to the letter appearing in (a) the answer, (b) the motion for judgment on the pleadings, and (c) in the memo in support of such motion for judgment on the pleadings; and (3) "reject Exhibit 8 to Defendants' Joint Answer as procedurally inappropriate in ruling on Defendant's Joint Motion for Judgment on the Pleadings."  (Doc. 15). Thrasher acknowledges in an affidavit filed with the court that she "consulted briefly" with Buckley in 1998 but disputes that she ever did so regarding any issues related to insurance, securities, or derivative suits brought against MedPartners or its directors or officers or regarding any claims that anyone might bring against her.  (*See* Thrasher Affidavit, Doc. 17, Exhibit A; Doc. 15, ¶ 6).  She claims that she never retained or paid Buckley to represent her in connection with the 1998 Securities Litigation or any other matter whatsoever, for that matter, and that she never knew of the April 6, 1999 letter nor authorized Buckley to send it on her behalf.  (Doc. 17, Exhibit A, ¶¶ 4-5; Doc. 15, ¶ 9).  She points out that the letter is not authenticated, and she contends that it is "disputed and immaterial" to her claims, that it is not "central" to such claims and may not properly be considered in connection with the defendants' Rule 12(c) motion for judgment on the pleadings.  (*See* Doc. 15 ¶¶ 3-5, 9, 10).  The defendants do not object to Thrasher's motion to strike insofar as it requests that the letter not be considered in connection with defendants' joint motion for judgment on the pleadings.  (Doc. 20 at 2).  However, the defendants do oppose Thrasher's motion to strike otherwise, including to the extent that it seeks for the court to formally strike either the letter itself as an exhibit to the answer or any references to the letter that are contained in the answer.

The court concludes that Thrasher's motion to strike is due to be granted in part and denied in part.  It is due to be granted insofar as it seeks to have the court exclude the letter from

being considered in connection with the defendants' motion for judgment on the pleadings.  The

defendants do not object to such course, and in any event, it would appear that the letter could

not be properly considered without converting the defendants' motion to one for summary

judgment under Rule 56.  This is because the letter does not appear to be a "written instrument"

that truly serves as the foundation of any claim or defense and because Thrasher challenges its

authenticity.  *See Horsley v. Feldt*, 304 F.3d 1125, 1133-35 (11th Cir. 2002).  Thrasher's motion

to strike is otherwise due to be denied, including specifically insofar as it asks the court to

formally strike the letter as an exhibit to the answer and any references to the letter in the answer.

A court may order stricken from any pleading "any insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter."  Rule 12(f), FED. R. CIV. P.; *In re Beef Industry

Antitrust Lit.*, 600 F.2d 1148, 1169 (5th Cir. 1979)[4].  As an exhibit attached to a pleading

pursuant to Rule 10(c), the letter is deemed part of the pleading for all purposes, including a

motion to strike under Rule 12(f).  *See* 5A Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, Fed. Prac. & Proc.: Civil § 1327 & n.10 (3d ed. 2004) (hereinafter "Wright & Miller").

However, a party is required to file a motion to strike within 20 days after being served with the

pleading in which the allegedly objectionable material in question appears.  Rule 12(f), FED. R.

CIV. P.  Because the defendants' joint answer attaching the Buckley letter was filed on September

21, 2006, Thrasher's instant motion to strike filed January 12, 2007, is untimely.

While the court is authorized on its own motion to strike offending material in a pleading

at any time, Rule 12(f), FED. R. CIV. P., the court concludes that such action is not warranted

---

[4]Opinions of the Fifth Circuit Court of Appeals handed down before the close of business on September 30, 1981 are considered binding precedent in the Eleventh Circuit.  *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

here, even if Thrasher's motion were timely.  "Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted."  Wright and Miller § 1380.  "[I]t must be shown that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party. . . .  Thus, even when technically appropriate and well-founded, they often are not granted in the absence of a showing of prejudice to the moving party." *Id*.; *see also Augustus v. Board of Public Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).  Judges enjoy liberal discretion in this area, *see McCorstin v. United States Dep't of Labor*, 630 F.2d 242, 244 (5th Cir. 1980); *In re Beef Industry Antitrust Lit., supra*, and the court is of the opinion that the contents of the letter and references thereto in the answer are not "legally insufficient" or "redundant, immaterial, impertinent, or scandalous matter" as contemplated by Rule 12(f).  While Thrasher disputes the import of the letter and whether Buckley was acting as her legal representative when he sent it, the letter has probative value on what is at least potentially a material issue in the case, namely the time at which Thrasher might be deemed on notice that the settlement of the 1998 Securities Litigation might not preclude any and all claims against her that might be related to the wrongdoing alleged in those cases.  Given that the letter is not being considered in connection with the defendants' Rule 12(c) motion, Thrasher cannot demonstrate how she might suffer unfair prejudice if the letter and references thereto remain part of the answer for other purposes.

### C.     The Defendants' Motion for Judgment on the Pleadings

The defendants have moved for judgment on the pleadings pursuant to Rule 12(c), Fᴇᴅ.

R. Civ. P.  In support of their motion, the defendants raise a number of arguments.  First, the defendants assert that Thrasher's claims are barred by the statute of limitations.  (Doc. 12 at § I). Second, the defendants argue that Thrasher's breach-of-contract claims fail because no contractual obligation existed between her and the defendants.  (*Id*. at § II).  Third, the defendants argue that the bad faith claims fail because the D&O Policies expressly exclude coverage for claims between MedPartners and the plaintiff.  (*Id*. at § III).  Fourth, the defendants argue that Thrasher's claims for "negligent or intentional failure to settle" fail because she was never a defendant in an action that was covered by the D&O Policies.  (*Id*. at § IV).  Fifth, the defendants argue that Thrasher's claim for breach of fiduciary duty fails because Alabama courts do not recognize a cause of action for breach of fiduciary duty separate and distinct from bad faith or negligent or intentional failure to settle.  (Doc. 12 at § V).  Sixth, the defendants argue that Thrasher's claims against AIG and the bad faith claims against all the defendants should be dismissed because the complaint improperly treats all defendants as a group, includes no basis for piercing the corporate veil, and fails to satisfy Rule 9(b), Fed. R. Civ. P.  (*Id*. at § VI). Finally, the defendants argue that Thrasher's claims against AISLIC and Illinois National are arbitrable, and the court should either dismiss or stay those claims pending the outcome of the arbitration.  (*Id*. at § VII).

### 1.    Legal Standards Applicable to a Rule 12(c) Motion

"After the pleadings are closed – but early enough not to delay trial– a party may move for judgment on the pleadings."  Rule 12(c), Fed. R. Civ. P.  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Palmer & Cay, Inc. v. Marsh & McLannan Companies*, 404 F.3d

1297, 1303 (11th Cir. 2005) (quoting *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002) (citations omitted)).   "A motion for judgment on the pleadings 'admits the plaintiff's factual allegations and impels the district court to reach a legal conclusion based on those facts.'" *Dozier v. Professional Foundation for Health Care, Inc.*, 944 F.2d 814, 816 n.3 (11th Cir. 1991) (*quoting Marx v. Gumbinner,* 855 F.2d 783, 789 n. 8 (11th Cir. 1988) (dictum)).   Thus, a court must accept all facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006).   However, a court is not bound to accept as true a legal conclusion couched as a factual allegation or unwarranted factual inferences.  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007); *cf. B.H. Papasan v. Allain*, 478 U.S. 265, 286 (1986) (recognizing this principle in connection with a Rule 12(b)(6) motion to dismiss for failure to state a claim).

### 2.     Procedural Matters

Thrasher makes a number of threshold arguments that the defendants' motion is premature or otherwise procedurally flawed.  First, she contends that the pleadings are not "closed" as required by Rule 12(c) because, while the defendants have answered, there is no scheduling order and she thus might still amend her complaint.  (Doc. 16 at 18).  This argument is without merit, because the pleadings are deemed "closed" for purposes of Rule 12(c) once a defendant has answered, assuming, as is the case here, that no counterclaim or cross-claim is made.  *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) (citing 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1367 (3d ed. 2004)).

Second, Thrasher contends that the defendants' joint answer "contests the material allegations contained in [her] [c]omplaint," rendering Rule 12(c) the improper procedural vehicle

for the defendants' motion.  (Doc. 16 at 18-19).  Indeed, Thrasher goes to considerable lengths to

detail exhaustively each of the facts that the defendants' have allegedly disputed in their answer

so as to purportedly preclude judgment on the pleadings.  (*See id.* at 20-24).  It is true that the

defendants have disputed a number of, or at least not admitted all of, the allegations of the

complaint.  However, the question at this point is not whether all of the facts in the complaint are

admitted but rather only whether those underlying facts that are "*material*" are undisputed and

compel the entry of judgment as a matter of law on one or more of Thrasher's claims.  *See*

*generally Palmer & Cay, supra,* 404 F.3d at 1303 ("Judgment on the pleadings is appropriate

where there are no *material* facts in dispute and the moving party is entitled to judgment as a

matter of law." (emphasis added)).  Facts are "material" only if they "might affect the outcome of

the suit under the governing law."  *Muhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir.

1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  And again, the court

need not credit either legal conclusions couched as factual allegations or unwarranted factual

inferences. *JPMorgan Chase Bank, N.A.,* 510 F.3d at 581-82.

While the defendants have not admitted the truth of all of Thrasher's allegations in the

complaint, the parties do agree on a substantial portion of the relevant underlying facts and

circumstances.  These include, most notably, which insurance policies issued to MedPartners

form the basis of Thrasher's claims against the defendants, as well as the terms of the written

settlement agreement concluding the 1998 Securities Litigation that enabled the company later to

assert counterclaims against Thrasher in her subsequent suit to enforce her employment

agreement.  To the extent that Thrasher's procedural argument here would require the court to

determine which among certain facts and circumstances are truly material and undisputed, the

inquiry merges with resolving the merits of the defendants' motion, a task the court will undertake below.

Third and finally, Thrasher argues that it would be improper to consider the defendants' motion as one for judgment on the pleadings because it relies upon matters outside the pleadings. If matters outside the pleadings are considered in resolving a Rule 12(c) motion, the motion must be treated as a motion for summary judgment under Rule 56, implicating additional notice and hearing requirements. *See* Rule 12(d) & Rule 56, FED. R. CIV. P.; *Horsely*, 304 F.3d at 1134. However, a court faced with a Rule 12(c) motion may consider, in addition to the four corners of the pleadings, a document attached to the pleadings pursuant to Rule 10(c), FED. R. CIV. P., without converting the motion to one for summary judgment, provided that document is both "(1) central to the plaintiff's claim; and (2) undisputed," which in this context means that the authenticity of the document is not challenged. *Horsley*, 304 F.3d at 1134.

As discussed previously, upon Thrasher's motion and without objection from the defendants, the court is not considering the April 6, 1999, letter that the defendants attached as exhibit 8 to their answer. However, that is only document among the many attached to the pleadings to which Thrasher has raised an objection at this stage. (*See* Doc. 16 at 24-26). The court finds that, to the extent that they are material and central to Thrasher's claims and to the defendants' motion, other exhibits attached to the answer and relied upon by the defendants in support of their motion may be properly considered under the Eleventh Circuit's ruling in *Horsely*. (*See* Doc. 21 at 33-35).[5] The court now turns to the merits of the defendants' motion,

---

[5] Some of the exhibits attached to the answer are actually also attached to the complaint as well. *See, e.g.*, Answer, Exhibit 1; Complaint, Exhibit B (the AISLIC Policy); Answer, Exhibit 4; Complaint, Exhibit C (the MOU); Answer, Exhibit 5; Complaint, Exhibit D (Stipulation of Settlement in the 1998 Securities Litigation). Exhibits 2 and 3 of the Answer are the D&O Policies, which Thrasher affirmatively urges the court to consider. (Doc. 16 at 47). The other exhibits attached to the complaint

addressing the parties' respective arguments on a claim-by-claim basis.

### 3.        The Merits of the Motion for Judgment on the Pleadings

#### a.        Breach of Contract

In count one of the complaint, Thrasher claims that the defendants breached insurance

contracts under which she was an insured as a current or former MedPartners' executive.  The

acts that Thrasher claims constituted a breach were the defendants' alleged agreement, as part of

the negotiations to supply supplemental coverage under the AISLIC Policy, to leave Thrasher

without insurance and the defendants' failure or refusal to obtain a full release in the 1998

Securities Litigation that would have precluded the company from later asserting counterclaims

against her based on similar alleged wrongdoing.  (Complaint ¶¶ 47-51).

In order to recover for breach of contract, a plaintiff has the burden to show "the

existence of a valid contract binding the parties in the action."  *Jones v. Alfa Mut. Ins. Co.*, 875

So. 2d 1189, 1195 (Ala. 2003); *see also Gonzalez v. Blue Cross/Blue Shield of Ala.*, 689 So. 2d

812, 819-21 (Ala. 1997); *Ligon Furniture Co. v. O.M. Hughes Ins., Inc.*, 551 So. 2d 283, 285

(Ala. 1989).  It is undisputed that the contracts that Thrasher claims were breached by the

defendants were the D&O Policies issued by National Union, attached to as exhibits 2 and 3 to

the answer.  (*See* Doc. 16 at 47).  She has disclaimed any reliance upon the AISLIC Policy on her

claims for breach.  (*See id.* at 53 n.5).  On their face, the D&O Policies each list defendant

National Union as the only "Insurer."  (Answer, Exhibits 2 & 3 at "Item 8").  While Thrasher

broadly asserts in her complaint that all defendants are liable for breach of contract, such

---

are documents that are closely related to Thrasher's claims and whose authenticity has not been challenged.  *See* Answer, Exhibit 6 (the company's response in arbitration in which it asserted its counterclaims against Thrasher); Exhibit 7 (Thrasher's pleading containing her employment agreement claims against the company); and Exhibit 9 (the "Order and Final Judgment" approving the settlement of the 1998 Securities Litigation).

conclusory allegations are not controlling where contradicted by the terms of the D&O Policies attached to the answer. *See Griffin Industries v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). Thus, even assuming for the sake of argument that Thrasher might show the existence of a breach by the insurer on an applicable policy, the court concludes that only National Union might be held liable. *See Gonzalez; Ligon Furniture, supra*.  Given that Thrasher acknowledges that she is proceeding against the defendants only for their own direct wrongdoing or in the capacity as an agent of another defendant, and not on a veil-piercing theory (doc. 16 at 55), the court concludes that, as non-parties to the relevant insurance contracts, defendants AIG, Illinois National, and AISLIC are entitled to judgment on the pleadings on these claims.

However, even assuming that all defendants were deemed insurers on the D&O Policies, the court concludes that the defendants would still be entitled to judgment on the pleadings.  It is axiomatic that, in order to prevail on these claims, Thrasher would be required to establish, among other things, that the defendant failed to perform under the terms of an applicable insurance policy or other contract. *State Farm Fire and Cas. Co. v. Williams*, 926 So. 2d 1008, 1013 (Ala. 2005); *Jones v. Alfa Mut. Ins. Co.*, 875 So. 2d 1189, 1195 (Ala. 2003).  The court agrees with the defendants that there is no reasonable basis upon which a jury might conclude that any of the conduct that Thrasher ascribes to the defendants constitutes a breach of any provision of the D&O Policies.  The only specific provision of any policy that Thrasher identifies at any point as having been breached is "Coverage A" of paragraph 1 of the D&O Policies (*see* Doc. 16 at 47), which sets forth the general "Insuring Agreements."  That section states in each policy as follows:

This policy shall pay the Loss of each and every Director or Officer of the

> Company arising from a Claim first made against the Directors or Officers during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors or Officers of the Company, except when and to the extent that the Company has indemnified the Directors of Officers. The Insurer shall, in accordance with and subject to Clause 8, advice Defense Costs of such Claim prior to its final disposition.

(*See* Answer, Exhibits 2 & 3, Clause 1, "Coverage A"). Thrasher says that the defendants' "breach of contract was their failure to provide an adequate release for [her] in the [1998 Securities Litigation." (Doc. 16 at 48). But nowhere in her complaint or in her briefs does Thrasher attempt to allege or explain specifically how that failure or any other actions of the defendants, as deliberate and calculated as they might have been, does not live up the insurer's obligations under the policy terms. Even taking all of Thrasher's allegations as true, she has made no claim that a defendant failed to pay a "Loss" covered under the D&O Policies based on a "Claim" made against Thrasher in the 1998 Securities Litigation, in which she was undisputedly not a defendant in any case. Nor does Thrasher contend that the defendants had a duty to provide a defense, cover any defense costs, or cover any other "Loss" under the policies that might have arisen from the counterclaims that the company asserted against her in July 2004. (Doc. 16 at 30). In fact, Thrasher expressly acknowledges that "[n]one of [her] claims present issues regarding what is and what is not a covered claim under the directors and officers liability policies issued by Defendants," (doc. 16 at 30), and that "this [case] is not a coverage dispute." (*Id.* at 48). By doing so doing, however, Thrasher effectively abandons any claim premised upon an alleged breach of contract: If the underlying litigation, *i.e.*, the 1998 Securities Litigation and the company's 2004 counterclaims, admittedly did not give rise to any legal claim against Thrasher for which there was coverage under any policy of insurance, no obligation of the

defendants under the policies was triggered, and the defendants cannot be liable for breach.

Nevertheless, Thrasher vigorously urges that she might recover for breach because defendants allegedly "sold out" her interests as an insured in favor of their own interests and those of MedPartners, the primary insured paying for the policies.  She contends that the defendants did so for millions of dollars in additional premiums from MedPartners on the AISLIC Policy and that the defendants then "left her without insurance coverage on an ongoing basis" (Complaint ¶ 26) by negotiating a settlement of the 1998 Securities Litigation that failed to provide a "complete" release for her, in that it reserved the company's right later to bring direct claims against her.  She contends that "there is no legal distinction between derivative claims and direct claims that arise from the same facts" (Doc. 16 at 27), and that because the settlement of the 1998 Securities Litigation did not preclude direct claims even if based on the same facts, "[a]s a legal, factual, and functional manner ... Defendants did not provide [her] with a meaningful release of the MedPartners securities litigation derivative claims."  Thrasher also emphasizes that the defendants "could" have obtained a release that would have precluded the company's direct counterclaims, that it was defendants' "usual practice" to attempt to secure broad releases for all directors and officers, and she laments that the defendants did secure complete releases for a variety of individuals, such as immediate family members of certain directors or officers, that were not even insureds under any relevant policy.  (Complaint ¶¶ 29-30; Doc. 16 at 31).  None of these arguments are availing.

The simple fact is that there is no language in the applicable insurance policies that might be construed as creating a legal duty in the defendants to have provided the "complete" release to which Thrasher claims entitlement.  Again, Thrasher has admitted that she is not contending that

22

she was entitled to coverage regarding any of the claims brought in the 1998 Securities

Litigation, in which she was not named as a defendant, nor regarding the counterclaims the

company brought against her in 2004.  She also does not dispute that she never gave defendants

notice of a claim under any policy at any time.  (Doc. 16 at 30).  Accordingly, it is unclear how

Thrasher conceives that the defendants had a duty to defend her interests in such a way to ensure

that any settlement released her from all potentially related liability, including for claims brought

directly by the company.  But even if Thrasher had been a party to the 1998 Securities Litigation

and any notice requirements in the policies were inapplicable, the relevant policies expressly

provide that there is, in fact, no coverage for claims of the sort to which Thrasher says the

defendants actions left her wrongfully exposed.  That is, at the heart of Thrasher's claims is her

contention that the defendants were required to provide her with a release protecting her from the

counterclaims brought against her by the company in July 2004.  The problem for Thrasher here

is the insured-versus-insured exclusion contained in the D&O Policies, which state in pertinent

part as follows:

### 4.       EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a
Claim made against an insured:

* * *

(i)       which is brought by any Insured or by the Company ....

Answer, Exhibit 2, ¶ 4(i); Exhibit 3, ¶ 4(i).  This exclusion is also incorporated into the AISLIC

Policy as well.  (Complaint, Exhibit B and Answer, Exhibit 1, at ¶ 4).  While a derivative action

allows shareholders to pursue the same claims and damages to which the company might be

entitled in a direct action, derivative and direct claims are expressly treated *differently* under the insurance contracts that establish any material relationships between Thrasher and the defendants and the scope of the parties' respective rights and obligations.  *See generally Stepak v. Addison*, 20 F.3d 398, 411 (11th Cir. 1994) ("[A]n [insured-versus-insured] exclusion denies insurance coverage when the corporation (or a director, officer, or corporate affiliate) sues an officer or director, even in a derivative context.  The exclusion does not apply when a shareholder sues an officer or director.").  Because the policies specify that the defendants have no obligations whatever to Thrasher (or any other insured) with regard to claims brought by another insured or by the company, Thrasher's claims founded upon the proposition that the company had a duty to take actions to protect her from liability or the costs of defending against such claims must fail.  Thrasher's facile protestations that "[t]his is not a coverage dispute" simply miss the point. (Doc. 16 at 49-50).  In the absence of a *duty* under an insurance contract that *required* one or more of the defendants to provide the benefit to which Thrasher claims she was entitled, it simply does not matter (1) how deliberate or calculating the defendants may have been in their failure to provide that benefit, (2) what benefits the defendants "could" have secured for Thrasher in negotiating the settlement, (3) what the defendants' "ususal practice" was with regard to securing releases for directors and officers, nor (4) what benefits the defendants bestowed upon others, voluntarily or otherwise.

Thrasher argues on two grounds, however, that the insured-versus-insured exclusion should not be enforced.  First, she intimates that the policy language containing the exclusion is ambiguous and that she had "reasonable expectations" that she would be protected under the policy.  (Doc. 16 at 50).  However, she fails to identify what she believes to be the nature of the

ambiguity.  "The terms of an insurance policy are ambiguous only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning."  *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 308-09 (Ala. 1999). Whether an insurance policy is ambiguous is a matter of law for the court to decide.  *Id.*  "[I]f there is no ambiguity, insurance contracts must be enforced as written, and court should not defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties."  *Guaranty Nat'l Ins. Co. v. Beeline Stores, Inc.*, 945 F. Supp. 1510, 1513 (M.D. Ala. 1996) (citing *Altiere v. Blue Cross & Blue Shield*, 551 So. 2d 290, 292 (Ala. 1989)); *see also Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1145 (Ala. 2005) (holding that reasonable-expectation doctrine only applies to ambiguous policy provisions).  The court concludes that the insured-versus-insured exclusion language is not ambiguous and is applicable on its face to MedPartners' counterclaims against Thrasher.  As such, Thrasher cannot escape the exclusion's effect on this basis.

Second, Thrasher argues that the insured-versus-insured exclusion was not enforceable as to the company's counterclaims against her because such exclusions are included director and officer liability policies, she says, only to protect the insurer from having to fund collusive suits between co-insureds.  Since the company's counterclaims in Thrasher's prior suit were undisputedly not collusive, she asserts that the exclusion should be deemed inapplicable.  (*See* Doc. 16 at 51-53).  This issue is controlled by Alabama substantive law.  *See Sphinx Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir. 2005).  The parties do not cite, and the court's own research has not revealed, any controlling authority directly on point.  In an unpublished decision, the Eleventh Circuit has applied an insured-versus-

insured exclusion to defeat a claim for coverage in a case apparently governed by Alabama law. *See Vulcan Eng'g Co. v. XL Ins. Amer., Inc.*, 201 Fed. Appx. 678, 2006 WL 2873204 (11th Cir. 2006). However, the only issue addressed was whether the exclusion applied by its terms; no argument was made that the exclusion's scope of application should be limited to suits resulting from collusion between insureds. But in *Sphinx*, the Eleventh Circuit was faced with just such a contention in a case governed by Florida law. The court there acknowledged that "[t]he original rationale behind the [insured vs. insured] exclusion was to bar coverage for 'collusive suits[,] such as suits in which a corporation sues its officers or directors in an effort to recoup the consequences of their business mistakes.'" *Sphinx*, 412 F.3d at 1229 (quoting *Level 3 Communications, Inc. v. Fed. Ins. Co.*, 168 F.3d 956, 958 (7th Cir. 1999)). The court further recognized that there is a split of authority on the question, with some courts indeed looking behind an exclusion's text to its rationale, while others focus exclusively on its plain text. *Id.* (citing cases). The Eleventh Circuit held, however, that the exclusion was enforceable in the case before it even though the suit was not collusive because the Florida courts had consistently interpreted insurance contracts according to their plain, unambiguous terms. *Sphinx*, 412 F.3d at 1229-30. The rule is the same in Alabama. The Alabama Supreme Court has stated:

> Unless the terms of an exclusion so narrowly restrict coverage as to render the contract unconscionable, the Legislature, and not the Court, is the proper forum for correction of what some may deem to be an excessively broad exclusion. This is particularly true in a case such as this one, in which the coverage is not mandated by a legislative statement of public policy, such as, for example, the statutory requirement that automobile-liability insurers offer uninsured-motorist coverage.

*Slade*, 747 So. 2d at 312. The insured-versus-insured exclusion is not so restrictive as to render the D&O Policies unconscionable. Nor does any decision of the Alabama courts or any positive

26

law of the state indicate that coverage of insured-versus-insured claims is required by public policy.  Accordingly, the court concludes that the Alabama Supreme Court would hold that the exclusion at issue here is enforceable as written.

Because the undisputed material facts establish that the defendants did not have a duty under the unambiguous terms of D&O Policies to secure a release for Thrasher in the 1998 Securities Litigation that would have precluded MedPartners from later bringing its direct claims against her, the defendants' failure to provide such a release did not amount to a breach of the applicable policies.  Therefore, the court concludes that all defendants are entitled to judgment on the pleadings on Thrasher's claims alleging breach of contract.

### b.        The Tort of "Bad Faith"

The defendants also argue that they are entitled to judgment on the pleadings with respect to Thrasher's claims alleging the tort of bad faith set forth in count two of the complaint.  In order to recover on a bad faith claim a plaintiff must prove: "(a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Employees' Benefit Ass'n v. Grissett,* 732 So. 2d 968, 976 (Ala. 1998) (quoting *National Security Fire & Casualty Co. v. Bowen,* 417 So. 2d 179, 183 (Ala. 1982)).  The defendants contend that, as a matter of law, they can have no liability for the tort of bad faith because they did not commit a breach of an

applicable insurance contract.  The court agrees.

While it is true that "[e]very contract contains an implied in law covenant of good faith and fair dealing," *Chavers v. National Sec. Fire & Cas. Co.*, 405 So. 2d 1, 4 (Ala. 1981), the tort of bad faith in Alabama does not provide a cause of action that is separate and independent of an insurance contract.  *See Slade*, 747 So. 2d at 318.  Thrasher contends that her claims "arise[ ] from defendants' various duties to treat [her] in good faith" and "not from any attempt to obtain insurance coverage."  (Doc. 16 at 30).  But liability for the tort of bad faith is limited to "those instances in which the insured's losses were covered under the policy."  *Slade, supra*.  Thus, "one who cannot prove she was entitled to benefits under an insurance policy cannot recover on a bad faith claim."  *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001).  In short, "contractual liability is a prerequisite for liability for bad faith."  *Id*.

In the preceding section, the court has set forth the basis for its conclusion that the defendants did not breach the D&O Policies, the insurance contracts that Thrasher has claimed were breached.  Indeed, given that National Union was the only defendant even party to those contracts and that Thrasher is not pursuing a veil-piercing theory, all other defendants, namely AIG, Illinois National, and AISLIC, cannot be held liable for the tort of bad faith.  *See Hicks v. Alabama Pest Services, Inc.*, 548 So. 2d 148, 150 (Ala. 1989) (holding that defendants were entitled to summary judgment on bad faith claims in the absence of evidence that the plaintiff had an insurance contract with any of them).  But as the court has also held that there was no breach of an applicable policy by *any* defendant because it is clear there was no policy coverage relative to the company's counterclaims filed in July 2004, all defendants are entitled to judgment on the pleadings as to Thrasher's bad faith claims.

### c.      Negligent/Reckless/Intentional Failure to Settle

In count three of her complaint, Thrasher asserts that the defendants had a duty to settle all claims that could be asserted against her in the 1998 Securities Litigation.  (Complaint ¶ 58). She further alleges that notwithstanding that the defendants could have settled all such claims, they "negligently, recklessly, deliberately, intentionally and/or wrongfully excluded Thrasher from the full scope of the release ... [while] knowing that [related] claims would be [later] asserted by MedPartners."  (*Id.* ¶ 59).  The defendants argue that they are entitled to judgment on the pleadings on these claims because Thrasher was not a defendant in the 1998 Securities Litigation and none of the relevant policies required the insurer to secure a release that would have precluded the company from bringing its direct counterclaims against Thrasher, for such claims were subject to the insured-versus-insured exclusion.  The court again agrees with the defendants.

Alabama recognizes that a plaintiff may bring separate and distinct claims for negligence and for bad faith based upon an insurer's failure to settle pending legal claims against its insured.[6]  *See Mutual Assur. Inc. v. Schulte*, 970 So. 2d 292, 296 (Ala. 2007).  Alabama courts appear to consider claims alleging an "intentional" or "bad faith" "failure to settle" by an insurer to be a species of the tort of bad faith.  *See id.* 970 So. 2d at 296.  To the extent that the allegations of count three amount to claims for the tort of bad-faith, they are due to be precluded

---

[6]Thrasher's claims in count three do not fit neatly within the rubric of "negligent or intentional failure to settle" as such claims are typically brought under Alabama law.  Normally, such claims involve a plaintiff insured who has sued her insurer that has assumed her defense in a legal action pursuant to a liability policy, and the insurer is alleged to have failed or refused, either negligently or in bad faith, to settle the underlying claim for policy limits or less and the insured is subsequently subjected to a judgment in excess of policy limits on the claims that the insurer declined to settle.  *See, e.g., Schulte*, 970 So. 2d at 296. Thrasher, by contrast, was not even named as a defendant in the 1998 Securities Litigation in which she claims the defendants owed her a duty of settlement.  Further, that underlying litigation was in fact settled without subjecting Thrasher to an adverse judgment.

for the reasons previously stated in the prior section, *i.e.*, that the undisputed facts demonstrate

that no defendant breached the terms of an applicable insurance policy.  *See Twin City Fire Ins.*

*Co. v. Colonial Life & Acc. Ins. Co.*, 375 F.3d 1097, 1101 (11th Cir. 2004) (recognizing that

under Alabama law, "one who cannot prove she was entitled to benefits under an insurance

policy cannot recover on a bad faith failure to settle claim" (citing *Slade,* 747 So. 2d at 318)).

Alabama does recognize a distinct cause of action for an insurer's negligent failure to

settle a pending legal claim.  *See Schulte*, 970 So. 2d at 296.  Ultimately, though, the viability of

such a claim here hinges upon Thrasher's ability to establish the existence of a tort duty requiring

settlement of the 1998 Securities Litigation so as to release Thrasher from liability for direct

claims that might be brought by the company.  *See generally Ex parte Blue Cross and Blue*

*Shield of Ala.*, 773 So. 2d 475, 480 (Ala. 2000) ("The essential elements of a tort include a

breach of a duty imposed by law."); *Bailey v. Faulkner*, 940 So. 2d 247, 258 (Ala. 2006) ("In any

area of tort law enforceable by state courts, there must be a legal duty to conform to a standard of

care.").  The undisputed facts establish that this she simply cannot do.

The existence of a tort duty is a question of law for the court to decide, in light of all the

facts and circumstances.  *Ex parte Wild Wild West Social Club, Inc.*, 806 So. 2d 1235, 1240 (Ala.

2001); *State Farm Fire and Cas. Co. v. Owen*, 729 So. 2d 834, 837-38 (Ala. 1998).  Thrasher

contends that a duty of due care arose based on a voluntary undertaking by the defendants.

Specifically, she says that "Defendants assumed an obligation to obtain a global settlement of the

[1998 Securities Litigation]" and that, by so doing, "they voluntarily assumed a duty to provide

Thrasher with a release but then failed to obtain a release that would adequately protect her."

(Doc. 16 at 34).  It was this "discriminatory and self-interested refusal to obtain a complete

30

release for their insured after their voluntary undertaking to settle the entire [1998 Securities Litigation]," she says, "[that] lies at the heart of *all* of Thrasher's claims against Defendants." (Doc. 23-1 at 12-13 (emphasis original)).

No doubt, as Thrasher argues, although a person may not owe a duty to another, a duty of care can arise when that person volunteers to act on behalf of another. *Palomar Ins. Corp. v. Guthrie*, 583 So. 2d 1304, 1306 (Ala. 1991). This principle of law applies to insurance companies. *Id*. (*citing, e.g.*, *Barnes v. Liberty Mutual Insurance Co.,* 472 So. 2d 1041, 1042 (Ala.1985); *United States Fidelity & Guar. Co. v. Jones,* 356 So. 2d 596, 597-98 (Ala.1978)). However, these cases simply stand for the proposition that once a defendant voluntarily undertakes to perform a particular duty not otherwise owed, that defendant must exercise due care in his performance. To the extent that Thrasher is alleging that the law of Alabama imposed upon the defendants, based on a theory of voluntary undertaking or otherwise, a legal duty that encompassed the specific obligation of procuring a release for Thrasher that would preclude liability for the company's subsequent direct counterclaims, such amounts a mere legal conclusion that is unwarranted by the material facts established by the pleadings and the exhibits thereto. Indeed, it is a legal conclusion that is belied by such facts, and it need not be credited by the court. *See JPMorgan Chase Bank,* 510 F.3d at 581-82; *Uptown Garden Center v. America First Ins.*, 2008 WL 4186861, 2 (E.D. La. 2008) (rejecting the plaintiff's argument that the court had to credit complaint allegations that the defendant insurer had assumed various legal duties on a Rule 12(b)(6) motion, on the ground that such allegations were mere statements of desired legal conclusions); *United HealthCare Ins. Co. v. AdvancePCS*, 2003 WL 22316555 at *4, n.3 (D. Minn. 2003) ("Asserting that Plaintiffs voluntarily assumed a duty does not make it so. The Court

31

need not accept as true wholly conclusory allegations ... and will not blindly accept the legal conclusions drawn by the pleader from the facts." (citation and internal quotation marks omitted)).

Thrasher was not a defendant in the 1998 Securities Litigation, so it is questionable whether the defendants' involvement in settlement activities after the issuance of the AISLIC Policy could give rise to any assumed duty to her in connection with settlement ultimately reached.  But even assuming it could, the insured-versus-insured exclusion of the D&O Policies meant that Thrasher had no coverage for claims that might be brought directly by MedPartners. Under those circumstances, it cannot be said that by simply taking control of the settlement negotiations in the 1998 Securities Litigation that the defendants assumed a duty to Thrasher specifically to secure her a release for claims that might be brought against her by MedPartners, where the policies expressly excluded coverage for such claims.  *Cf. Upton v. Mississippi Vallve Title Ins.* Co., 469 So. 2d 548, 557 (Ala. 1985) (where insurance contract specifically provided the types of public records that the defendant insurer was required to search and such did not include circuit court records, no tort duty to inspect such records existed, despite the fact that the insurer had voluntarily undertaken to inspect certain other types of records it was not contractually obligated to review).  The court concludes that the defendants are entitled to judgment on the pleadings on the claims of count three of the complaint.

### d.    Breach of Fiduciary Duties

Finally, count four of the complaint alleges that the defendants breached fiduciary duties that arose from their contractual duties, superior knowledge, and/or assumption of duties when they settled the 1998 Securities Litigation without securing a release that would preclude the

company from later bringing direct claims against Thrasher.  (Complaint at ¶¶ 61-64).  It would appear that these claims are founded primarily upon allegations that the defendants breached fiduciary obligations of loyalty and good faith prohibiting the defendants from favoring their own interests or the interests of MedPartners, as the primary insured paying for the policies, over the interests of Thrasher, also an insured.  (*See* Doc. 16 at 32-39).  The defendants argue that these claims are simply duplicative of Thrasher's claims alleging bad faith or tortious failure to settle and that they are entitled to judgment on the pleadings based on the same grounds they raise on those claims, including that there undisputedly was no coverage under the applicable insurance policies for the types of direct counterclaims brought against Thrasher by the company.

Alabama does appear to recognize a distinct cause of action for "breach of fiduciary duty."  The Alabama Supreme Court has held that such a claim sounds in tort and that damages are a requisite element.  *See Systrends, Inc. v. Group 8760, LLC*, 959 So. 2d 1052, 1075 (Ala. 2006).  Other elements do not appear to have been as clearly articulated.  At a minimum, it would seem that a plaintiff would be required to prove the four traditional elements of a tort claim: (1) the existence of a legal duty in the defendant imposed by law and owed to the plaintiff, (2) the defendant's breach of that duty, (3) proximate cause, and (4) compensable damage.  *See Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002); *Dorsey v. Greene*, 922 So. 2d 121, 127 (Ala. Civ. App. 2005).  It is also not entirely clear whether and to what extent such a claim against an insurer is truly distinct from a claim for the tort of bad faith or tortious failure to settle.  But to the extent that Thrasher's claims in this count are redundant of her claims in counts two or three or both, the court concludes that the defendants are entitled to judgment on the pleadings for the reasons stated in the prior sections addressing those counts.  But even to the extent that this

represents an independently viable cause of action, the court concludes that the defendants are entitled to judgment on the pleadings, as explained below.

Citing *L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1303 (Ala. 1987), Thrasher contends that the defendants had fiduciary duties as her insurer to treat her "fairly and not to put their own interests above those of their insured." (Doc. 16 at 32). She also cites and quotes from a number of cases, primarily from the California state courts, supporting that an insurer may be liable for bad faith where it favors the interests of one insured over another, as where it settles for policy limits with one insured but leaves another completely exposed to liability. (*See id*. at 32-34, discussing *Shell Oil Co. v. National Union Fire Ins. Co.*, 44 Cal. App. 4th 1633 (Cal. App. 2. Dist. 1996); *Lehto v. Allstate Ins. Co.* 31 Cal .App. 4th 60 (Cal. App. 2. Dist. 1994); *Strauss v. Farmers Ins. Exchange*, 26 Cal. App. 4th 1017 (Cal. App. 1. Dist. 1994); *Smoral v. Hanover Ins. Co.*, 322 N.Y.S.2d 12 (N.Y. App. 1971)). Based on these cases, Thrasher says that the defendants acted in bad faith and in breach of their fiduciary duties in that they opted to favor their own interests, in accepting millions in new premiums on the AISLIC Policy, and to favor the interests of MedPartners as the primary insured, by carving out an exception in the settlement of the 1998 Securities Litigation that expressly preserved the right of MedPartners to bringing direct claims against Thrasher, thereby exposing her to potential liability on claims seeking millions of dollars in damages.

The court would note that there is a split of authority on the question of whether an insurer engages in wrongful conduct where it settles pending claims against one insured for policy limits but thereby leaves another insured on the same policy who has yet to be sued potentially exposed to liability, with the majority position apparently being that no action will lie

34

in such circumstances.  *See Travelers Indemnity Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 766 & n.3 (5th Cir. 1999) (citing cases and stating that *Smoral* and the California cases cited by Thrasher represent a minority position).  Accordingly, given that it is undisputed that Thrasher was not a party to the 1998 Securities Litigation, it is subject to question whether even a settlement that entirely failed to release Thrasher for *any* liability could give rise to a viable claim for bad faith or breach of fiduciary duty.  That issue need not be decided here insofar as the settlement in the 1998 Securities Litigation did provide a release of liability upon the derivative claims brought by shareholders in that litigation.  Thrasher, however, faces other hurdles.  The cases upon which she relies each involved a legal claim in the underlying action that was within the coverage of the liability policy.  *See Shell Oil*, 44 Cal. App. 4th 1644 ("Under its policy, [the insurer] was separately obligated to both [insureds named as defendants], but only to an indemnity limit of $1 million for both"); *Lehto*, 31 Cal. App. 4th at 64 (insurer assumed defense of its two insureds, a teenage driver and his father, arising out of a motor vehicle accident covered under a liability policy); *Strauss*, 26 Cal. App. 4th at 1019 & n.1 (acknowledging the applicability of a liability policy to the auto accident prompting the underlying action against three insureds); *Smoral*, 322 N.Y.S.2d at 14 (recognizing that the party claiming bad faith "was an insured [the insurer] was by law required to defend").  Thus, the question in those cases was whether the insurer could lawfully favor one insured over another in its dispensation of limited benefits that the insurer would have owed to *each* of multiple insureds under the terms of the policy.  By contrast, it is undisputed here that the counterclaims that MedPartners brought against Thrasher in 2004 were *not* covered under the terms of the D&O Policies.  As such, the cases Thrasher relies upon are distinguishable and inapposite.  While duties of loyalty and good faith

may indeed impose certain restrictions upon the ability of an insurer to favor one insured over

another, they do not go so far, at least in these circumstances, as to have required the defendants

to provide Thrasher with unbargained-for protection or benefits for claims not covered under a

policy.  *See Slade, supra* (holding that a breach of the policy is a prerequisite for bad-faith

liability); *Nationwide Mut. Fire Ins. Co. v. Pabon*, 903 So. 2d 759, 764 (Ala. 2004) (recognizing

that where it was determined that insurer owed no coverage under the policy, such "rendered

moot [the plaintiff's] breach-of-contract, bad-faith-refusal-to-pay, and breach-of-fiduciary-duty

claims").  The court concludes that the defendants are entitled to judgment on the pleadings with

respect to Thrasher's claims in count four of her complaint.[7]

### e.      Dismissal with Prejudice or Leave to Amend

Based on the foregoing, the defendants are entitled to judgment on the pleadings as to all

claims.  Thrasher argues in her brief that should the court reach this result, rather than dismissing

the action, the court should grant her an opportunity to amend to correct any pleading

deficiencies.  The court concludes, however, that the action is due to be dismissed with prejudice.

A complaint may be dismissed with prejudice and without leave to amend pursuant to

Rule 12(c) where "amendment of the complaint would be futile or if it is patently obvious that

the plaintiff could not prevail."  *Byrne v. Nezhat*, 261 F.3d 1075, 1127 n.99 (11th Cir. 2001); *see*

*also Sibley v. Lando*, 437 F.3d 1067, 1073 (11th Cir. 2005).  "Leave to amend a complaint is

futile when the complaint as amended would still be properly dismissed or be immediately

subject to summary judgment for the defendant."  *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th

---

[7]Because the court concludes that the defendants are entitled to judgment on the pleadings as to all counts based on the grounds stated herein, the court pretermits discussion of any of the other grounds asserted by the defendants in support of their motion.

Cir. 2007) (citing *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1263 (11th Cir. 2004)).

The court concludes that any amended complaint that Thrasher might file would be subject to dismissal and thus futile.  While the defendants have asserted a number of arguments founded upon alleged pleading insufficiencies, including under Rule 9(b), FED. R. CIV. P., the court has not relied on such grounds as the basis for its conclusion that defendants are entitled to judgment.  Thrasher cannot overcome the fatal flaws in her claims by way of an amended complaint.  As discussed herein, the claims that MedPartners asserted against Thrasher in 2004 were specifically excluded from coverage under the D&O Policies, and an amended pleading cannot change that fact, which effectively precludes all of her claims.  In addition to her 17-page complaint, Thrasher has submitted a 75-page opposition brief (doc. 16), as well as a 23-page surreply brief (doc. 23).  In none of those pages, however, has Thrasher articulated a theory under which she might prevail against the defendants for the conduct she has alleged, nor how she might propose to amend her complaint so as to support a viable claim on the merits.  Accordingly, the court concludes that amendment is futile and that this action is due to be dismissed with prejudice.

## IV.   CONCLUSION

For the reasons stated above, the magistrate judge **FINDS** that (1) the plaintiff's motion for leave to file a supplemental memorandum (doc. 26) be **GRANTED**; (2) that the plaintiff's motion to strike (doc. 15) be **GRANTED IN PART AND DENIED IN PART**, as set forth herein, and (3) that the defendants' motion for judgment on the pleadings (doc. 8) be **GRANTED** and this action be **DISMISSED WITH PREJUDICE**.  An order in accordance with these findings will be entered.

The Clerk is **DIRECTED** to serve a copy of this Memorandum Opinion upon the counsel for the parties.

**DONE**, this the 29th day of September, 2008.

_John E. Ott_

**JOHN E. OTT**
United States Magistrate Judge